IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN FLYNN, JAMES BOLAND, GERALD O'MALLEY, KEN LAMBERT, GERARD SCARANO, H. J. BRAMLETT, EUGENE GEORGE, ROBERT HOOVER, MATTHEW AQUILINE, GREGORY R. HESS, MICHAEL SCHMERBECK, VINCENT DELAZZERO, BENJAMIN CAPP, and WILLIAM MCCONNELL<br>as Trustees of, and on behalf of, the<br>BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND<br>620 F Street, N.W.<br>Washington, DC 20004<br>(202) 783-3788,<br><br>and<br><br>JIM ALLEN, MATTHEW AQUILINE, LON BEST, JAMES BOLAND, TED CHAMP, RAYMOND CHAPMAN, VINCENT DELAZZERO, BRUCE DEXTER, JOHN FLYNN, EUGENE GEORGE, GREGORY HESS, FRED KINATEDER, DAN KWIATKOWSKI, KEN LAMBERT, SANTO LANZAFAME, DICK LAUBER, WILLIAM MCCONNELL, EDWARD NAVARRO, GERALD O'MALLEY, JOHN PHILLIPS, CHARLES RASO, MARK ROSE, KEVIN RYAN, GERARD SCARANO, MICHAEL SCHMERBECK, PAUL SONGER, JOSEPH SPERANZA, and FRED VAUTOUR<br>as Trustees of, and on behalf of, the<br>INTERNATIONAL MASONRY INSTITUTE<br>620 F Street, N.W.<br>Washington, DC 20004<br>(202) 783-3788,<br><br>Plaintiffs,<br><br>v.<br><br>ELEGANTE CERAMIC TILE & MARBLE INSTALLATION, INC.<br>c/o Patrick J. Larocca, Jr., Agent<br>for service of Process<br>1607 Merriweather<br>Troy, MI 48098,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br><br><br><br><br>Civil Action No: |

## COMPLAINT

Plaintiffs, by their attorneys, DICKSTEIN SHAPIRO LLP, complaining of the Defendant, allege as follows:

### CAUSE OF ACTION
### Jurisdiction and Venue

1. This is an action brought by the fiduciaries of the Bricklayers & Trowel Trades International Pension Fund ("IPF" or "Fund") and the fiduciaries of the International Masonry Institute ("IMI") to enforce the terms of the Plan and Trust Agreements adopted by the IPF and IMI, and the provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). This action arises under the laws of the United States, specifically Section 502(a)(3), 502(g)(2), and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3), 1132(g)(2), 1145. Pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), jurisdiction is therefore conferred on this Court as to the claims brought on behalf of the IPF and IMI.

2. The IPF and IMI are administered in the District of Columbia. Venue for the claims asserted by the IPF and IMI is conferred on this Court pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), which provides:

> (2) Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

### Parties

3. Plaintiffs, John Flynn, James Boland, Gerald O'Malley, Ken Lambert, Gerard Scarano, H. J. Bramlett, Eugene George, Robert Hoover, Matthew Aquiline, Gregory R. Hess, Michael Schmerbeck, Vincent DeLazzero, Benjamin Capp, and William McConnell, are Trustees of, and sue on behalf of, the IPF. The IPF is an "employee benefit plan" within the

2

2417755

meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). The IPF trustees bring this action on behalf of, and for the benefit of, the beneficiaries of the IPF in their respective capacities as fiduciaries.

4. The IPF also is authorized to effect collections on behalf of the IMI, pursuant to a written Assignment of Claims and the *Collection Procedures of the Central Collection Unit of the Bricklayers and Allied Craftworkers* ("Collection Procedures").

5. Plaintiffs, Jim Allen, Matthew Aquiline, Lon Best, James Boland, Ted Champ, Raymond Chapman, Vincent Delazzero, Bruce Dexter, John Flynn, Eugene George, Gregory Hess, Fred Kinateder, Dan Kwiatkowski, Ken Lambert, Santo Lanzafame, Dick Lauber, William McConnell, Edward Navarro, Gerald O'Malley, John Phllips, Charles Raso, Mark Rose, Kevin Ryan, Gerard Scarano, Michael Schmerbeck, Paul Songer, Joseph Speranza and Fred Vautour, are Trustees of, and sue on behalf of the IMI. The IMI is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). The IMI trustees bring this action on behalf of, and for the benefit of, the beneficiaries of the IMI in their respective capacities as fiduciaries.

6. Defendant, Elegante Ceramic Tile & Marble Installation, Inc., ("Elegante Ceramic" or "Defendant") is, and at all times hereinafter mentioned was, a company maintaining offices and conducting business in the state of Michigan.

7. Defendant employs or has employed members of the International Union of Bricklayers and Allied Craftsmen and its affiliated local unions ("Union").

3

2417755

### Violation Charged

8.    Elegante Ceramic acting through its authorized agents or officers, executed a collective bargaining Agreement with the Union.  The collective bargaining agreement is annexed hereto as Exhibit A, and is hereinafter referred to as the "Agreement."

9.    Pursuant to the Agreement, Defendant agreed to make certain payments to the IPF and IMI for covered work performed by employees of Defendant.

10.    Having submitted some contributions, Defendant has demonstrated an awareness of the obligation to make those payments.

11.    Although Defendant submitted Reports to the IPF for work performed pursuant to the Agreement during the months of July 2006 through February 2008, Defendant failed to fully pay all related fringe benefit contributions due and payable to the Fund for work performed during this time period.  The IPF has prepared a Recap of delinquent fringe benefit contributions due the IPF and IMI based on Employer Reports submitted by Defendant.

12.    The total of contributions due the IPF and IMI by Defendant for work performed during the months of July 2006 through February 2008 as determined by the IPF Recap amount to $60,578.00.

13.    Under the terms of the Plan and Trust Agreements adopted by the IPF and IMI, interest in the amount of $7,634.27, calculated at the rate of 15 percent per annum from the Due Date through March 24, 2008, and liquidated damages in the amount of $10,787.60 calculated at 20 percent, have been assessed on such delinquent contributions determined due by the IPF Recap.

4

2417755

14.    Plaintiffs have brought this action in faithful performance of the fiduciary duties imposed upon them under Section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1).  Plaintiffs have been, and are, incurring additional attorney's fees as a direct result of Defendant's failure to make contributions in accordance with the terms and conditions of the Agreement.

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1.   For the total amount of $79,349.87, which is constituted as follows:

a.   For unpaid contributions in the amount of $60,578.00 payable to the IPF and IMI for the time periods specified above, plus any and all additional amounts found to be due and owing through the date of judgment (ERISA Section 502(g)(2)(A);  Collection Procedures);

b.   For interest in the amount of $7,634.27 assessed on such unpaid contributions, calculated at 15 percent per annum from the Due Date through March 24, 2008 (ERISA Section 502(g)(2)(B); Collection Procedures);

c.   For liquidated damages in the amount of $10,787.60, assessed on such unpaid contributions, calculated at the rate of 20 percent (ERISA Section 502(g)(2)(C)(i); Collection Procedures);

d.   For the costs of filing this action in the amount of $350.00 (ERISA Section 502(g)(2)(D));

2.   In the amount of Five Thousand Dollars ($5,000.00), and such additional amounts as may be incurred, representing attorney's fees and costs of this action (ERISA Section 502(g)(2)(D)).

3.   That Defendant be directed to comply with its obligations to submit all required reports and to make all contributions due and owing to the IPF and IMI, and to pay the costs and disbursements of this action.

2417755

4.  Such other relief as this Court deems appropriate, including judgment for any contributions and interest thereon that may accrue subsequent to the filing of this Complaint, as well as any resulting statutory damages thereon under ERISA.

Dated: April ___8___, 2008

By: _____

Ira R. Mitzner, DC Bar No. 184564
Charles V. Mehler III, DC Bar No. 475909
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC  20006
(202) 420-2200

Attorneys for Plaintiffs

6

2417755

Exhibit A

M19164

## LOCAL #32 MICHIGAN          SEP 00 1991

## TILE LAYERS & TILE FINISHERS AGREEMENT

This agreement between the DETROIT CERAMIC TILE CONTRACTORS ASSOCIATION, the members of which are hereinafter called Employer, and the TILE LAYERS & TILE FINISHERS OF BAC LOCAL NO. 32 OF MICHIGAN, hereinafter called Union, is operative from July 11, 1991 through May 27, 1992.

**JURISDICTION:** Counties of Monroe, Wayne, Macomb, Oakland, St. Clair, Sanilac, Washtenaw, Lapeer and Livingston.

The Employer agrees to recognize and does hereby recognize the Union as the exclusive bargaining agent for the Tile Layers, Apprentices, Improvers, Tile Finishers and Trainees performing labor required under this Agreement.

### ARTICLE I

### SCOPE OF WORK

**1 )       TILE LAYERS WORK:**

**A )** The laying, cutting or setting of all tile where used for floors, walls, ceilings, walks, promenade roofs, stair treads, stair risers, facings, hearths, fireplaces, and decorative inserts, together with any marble plinths thresholds or window stools used in connection with any tile work; also to prepare and set all concrete, cement, brickwork or other foundation or materials that may be required to properly set and complete such work; the setting or bedding all tiling, stone, marble, composition, glass mosaic, or other materials forming the facing, hearth, fireplace of a mantel, or the mantel, complete, together with the setting of all cement, brickwork, or other material required in connection with the above work; also the slabbing and fabrication of tile mantels, counters and tile panels of every description and the erection and installation of same. The building, shaping, forming construction or repairing of all fireplace work, whether in connection with a mantel hearth facing or not, and the setting and preparing of all material such as cement, plaster, mortar, brickwork, iron work or other materials necessary for the proper and safe construction and completion of such work, except that a mantel made exclusively of brick, marble or stone, shall be conceded to be bricklayers, marble setters or stonemasons' work respectively.

**B )** It will be understood that the work "TILE" refers to all burned clay products, as used in the tile industry, either glazed or unglazed, and to all composition materials made in single units and mixtures in tile form of cement, plastics, and metals that are made for and intended for use as a finished floor surface, whether upon interior or exterior floors, stair treads, promenade roofs, garden walks, interior walls, ceilings, swimming pools, and all places where tile may be used to form a finished surface for practical use, sanitary finish or decorative purposes, for setting all accessories in connection therewith, or for decorative inserts in other materials.

1

This is a copy from the IUBAC Document Management System..

FBI 9164

C)     All terra cotta called unit tile regardless of method of installation and split brick, quarry tile or similar material where the bed is floated or screeded and the joints grouted. Where the work is installed by Tile Layers, the bedding, jointing, and pointing of the above materials shall be the work of the craft installing the same.

D)     All clay products known as terra cotta tile, unit tile, ceramic veneer and machine made terra cotta, regardless of the method of installation. Where the preponderance of materials to be installed comes within the provisions of this section and when there is also some material in excess of the sizes provided for in this section, the tile layer shall install all such materials.

E)     All work described above will be performed only by Tile Layers, Apprentices and Improvers working under this Agreement.

## 2) TILE FINISHERS WORK

A)     Tile Finishers shall do all cleaning of tile and all grouting of tile, and shall handle all materials such as sand, cement, lime, tile, all types of tile panels, prefabricated tile units including the unpacking of all tile and any other form of tile or material that may be used by the Tile Layer, after being delivered on job site.

B)     Cleaning of tile shall be part of the tile contract of the Employer and shall be the exclusive work of Finishers hereunder. Cleaning of tile shall include all washing of every kind and removal of all scum and residue of every nature. All packages will be unloaded by said Finishers or Finishers regardless of number.

C)     The Finisher shall do all the grouting of tile work installed by the Tile Layers. All materials must be placed within a reasonable distance from the place it is to be installed regardless of what floor. All power equipment such as power buggies, mortar mixers, fork lifts, etc., required to be used at the job site by the Finishers in conjunction with tile laying operations shall be operated by same.

D)     The Employer on all jobs shall furnish to the Finisher pails, sponges, rags, and mixing boxes, also wheelbarrows where necessary, hoes, shovels, and all other materials that a Finisher needs on the job. All the above mentioned and equipment will be cleaned daily.

## ARTICLE II

**WORKING CONDITIONS:**

A)     It shall be a condition of employment that all employees of the Employer covered by this Agreement who are members of the Union in good standing on the effective date of this Agreement shall remain members in good standing and those who are not members on the effective date of this Agreement shall on or before the eighth (8th) day following the effective date of this Agreement, become and remain members in good standing in the Union.

2

This is a copy from the IUBAC Document Management System..

**B)**    The Employer agrees that in the employment of workmen to perform the various types of labor required under this Agreement it will not discriminate against the employees because of membership or non-membership in the Union.

**C)**    In order to avoid any differential between Employers when obtaining labor, it is hereby agreed that the Employer party to this Agreement shall provide Unemployment Compensation Insurance for all employees. All Employers shall furnish the Union with the MESC number when requested.

**D)**    All Employers shall maintain Michigan Workmen's Compensation Insurance and shall comply with the Michigan laws governing tile contractors. All Employers shall furnish the Union with a copy of their Workmen's Compensation Insurance Certificate when requested.

**E)**    In hiring and retention of Tile Layers and Tile Finishers, the Employer shall give preference to Tile Layers and Tile Finishers regularly employed in the area, except that an out of town contractor may bring one man not regularly employed in the area with him.

**F)**    Whenever a particular job may require the possible use of any special safety equipment, the Employer shall furnish to the Tile Layers and Tile Finishers any such special safety equipment which is necessary to maintain safe work standards required on the job. Each Tile Layer and Tile Finisher shall be responsible for his own safety equipment that is issued to him by the Employer. All equipment shall be returned to the Employer by the Tile Layer and Tile Finisher upon completion of his employment on said job.

**G)**    The Employer shall also furnish the Employee with the necessary clothing and proper ventilation in working with Epoxys and Furnanes.

**H)**    There shall be no limitations by the Union on the amount of work a Tile Layer and Tile Finisher shall perform during a working day; neither shall the Employer be permitted to specify or insist upon a certain amount of work to be performed.

**I)**    Tile Layers and Tile Finishers to be laid off when ever possible shall receive twenty-four (24) hours notice before layoff.

**J)**    The Union further agrees that any of its members with properly supplied materials failing to produce a standard grade of workmanship through negligence, carelessness or lack of sobriety shall not be entitled to compensation for same.

**K)**    **Tile Layers Foreman:** Commencing with the third Tile Layer on a job, there shall be a foreman designated, and he shall be paid One Dollar ($1.00) per hour extra for all hours worked while acting as foreman. On work where a foreman is required, he is to be the agent of the Employer and he shall be a practical Tile Layer. Tile Layers working 85 miles will be paid foreman's rate at One Dollar ($1.00) per hour extra for all hours worked while acting as foreman.

**L)**    **Tile Finisher Foreman.** The pay rate for foreman of 6 or more Finishers on a job shall be $0.50 per hour above the base rate for all hours worked.

3

This is a copy from the IUBAC Document Management System..

M )       All signatory Employers will employ a minimum of one Tile Layer / Tile Finisher.    No Employer shall allow or permit other than a Tile Layer or an indentured apprentice / Tile Finisher to do Tile Layer's or Tile Finishers work respectively.

N )       **Special Shift.** When conditions make it impractical to work a shift wholly during regular working hours and when only one shift per day is employed on the job by the Employer, a single eight-hour shift per day, known as a special shift - any time before 7:00 a.m. and after 9:00 a.m. - may be worked by the Employer. Pay for the special shift shall be $3.00 per hour above base rate. The Union will be notified of special work to be performed.

O )       **Scaffold Work.** Pay for work on scaffolding over 15 feet, shall be $0.50 per hour above the base rate for all hours worked.

P )       Work upon which employees shall put in a full eight hour day and receive eight hours pay for same shall be within the territories bounded by Monroe, Wayne, Oakland Counties and Mt. Clemens, which constitutes the metropolitan area of Detroit, Michigan.

Q )       Any toll bridge or toll charges incurred by an employee travelling to and from work will be paid by the Employer in the State of Michigan.

R )       **Parking:** When free parking is not available in downtown Detroit, a $4.00 a day parking reimbursement will be issued to the driver of the vehicle.

S )       **Travel Expense:** Expenses to cover transit and transportation shall be reimbursed to each man per day outside of the 25 mile radius from the Detroit City Hall as the following zone rates according to current published zone map.

| | | | |
|---|---|---|---|
| 25 mi. to 35 mi. | $3.00 | 55 mi. to 65 mi. | $6.00 |
| 35 mi. to 45 mi. | $4.00 | 65 mi. to 75 mi. | $7.00 |
| 45 mi. to 55 mi. | $5.00 | 75 mi. to 85 mi. | $8.00 |

Over 85 miles $45.00 per day based on seven days, plus transit and transportation, once to the job and once back at the rate to twenty cents ($0.20) per mile from the 25 mile radius.

## ARTICLE IV

### WAGES AND FRINGES

1 )       **WAGES:**
      **Payment of wages:** All wages paid by the tile contractors to their employees shall be paid in currency or negotiable check with itemized statement showing employee's name, hours worked and deductions, on each Friday, not later than 4:30 P.M. and shall include all time up to and including the Wednesday previous. In case of a holiday on Friday, payment shall be made on the preceding Thursday. Any Tile Layer and/or Tile Finisher failing to receive his money on regular payday, or at the time of discharge shall receive waiting time not to exceed two days.

4

This is a copy from the IUBAC Document Management System..

MI 9164

When any man leaves work of his own accord, the employer shall not be obligated to pay him before the regular pay day. Any man who is discharged or laid off by the Employer shall be paid at once in full.

In case of any dispute of wages due employees, contractor shall pay under protest pending settlement of dispute by Joint Board of Arbitration. The paycheck will be deposited with the Office of the Union.

## A) TILE LAYERS WAGES:

| | |
|---|---|
| BASE RATE | $17.87 |
| VACATION & HOLIDAY | $2.00 |
| DUES CHECK OFF | $0.40 |
| | ——— |
| TAXABLE | $20.27 |
| HEALTH & WELFARE | $2.50 |
| PENSION | $2.20 |
| INT. PENSION | $0.75 |
| PROMOTION | $0.10 |
| APPRENTICESHIP | $0.02 |
| | ——— |
| TOTAL | $25.84 |

## B) TILE IMPROVER'S WAGES:
### IN TRADE PRIOR TO JULY 11, 1991:

The wage rate of Improvers shall be Ninety Percent (90%) of the Tile Layer's base wage rate plus all Fringes.

## C) TILE FINISHERS WAGES:

| | |
|---|---|
| BASE RATE | $15.07 |
| VACATION & HOLIDAY | $2.00 |
| DUES CHECK OFF | $0.40 |
| | ——— |
| TAXABLE | $17.47 |
| HEALTH & WELFARE | $2.50 |
| PENSION | $2.00 |
| INT. PENSION | $1.15 |
| SUB | $0.50 |
| PROMOTION | $0.10 |
| TRAINING | $0.02 |
| | ——— |
| TOTAL | $23.74 |

5

This is a copy from the IUBAC Document Management System..

MT 9164

## D)  FULL FINISHER TO IMPROVER:
### HIRED INTO TRADE AFTER JULY 11, 1991
Full Finishers are to be advanced to Improver status based on Joint Committee approval. (3 Union and 3 Contractors; meeting quarterly).

**1 )**        First (1st) year:  $0.25 more than the Full Finishers base rate.   To be reviewed Quarterly during  the first year worked and must attend training classes during the year. Employee to be moved to another Contractor at the discretion of the Committee.

**2 )**        Second (2nd) year:   Improver will receive $0.50 more than the Full Finisher's base rate.   Must attend training classes during the  year.Employee to be moved to another Contractor at the discretion of the Committee.

**3 )**        Third (3rd) year:   Improver will receive $1.00 more than the Full Finisher's base rate and to   be reviewed quarterly. Must attend training classes during the   year. Employee to be moved to another Contractor at the discretion of the Committee.

**4 )**        After three years Improver to receive Full Tile Layers wages and benefits or return to Full Finishers status at the discretion of the Committee.

Present Full Finishers and present Trainee Finishers will be protected by the Committee to insure job security to a degree.

6

MT 9164

**E) TILE TRAINEE WAGES:  IN TRADE BEFORE JULY 11, 1991**

TILE FINISHERS TRAINEE'S PROGRAM
TRAINEE'S PROGRAM: TILE FINISHER WHO STARTED WORKING IN THE     TRADE
BEFORE JULY 11, 1991

**EACH PERIOD COVERS AN ACTUAL 6 MONTHS WORK**

| PERIOD | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| BASE RATE | $ 6.25 | $ 7.25 | $ 8.00 | $ 9.25 |
| DUES CHECK OFF | .40 | .40 | .40 | .40 |
| VACATION | .25 | .50 | .75 | 1.00 |
| TAXABLE | $ 6.90 | $ 8.15 | $ 9.15 | $10.65 |
| INSURANCE | 2.50 | 2.50 | 2.50 | 2.50 |
| PENSION | .25 | .50 | .75 | 1.00 |
| INT. PENSION | .00 | .00 | 1.15 | 1.15 |
| SUB FUND | .50 | .50 | .50 | .50 |
| PROMOTION | .10 | .10 | .10 | .10 |
| TRAINING | .02 | .02 | .02 | .02 |
| TOTAL | $10.27 | $11.77 | $14.17 | $15.92 |

| PERIOD | 5 | 6 | 7 |
|---|---|---|---|
| BASE RATE | $10.25 | $ 11.25 | $ 12.25 |
| DUES CHECK OFF | .40 | .40 | .40 |
| VACATION | 1.25 | 1.50 | 1.75 |
| TAXABLE | $11.90 | $ 13.15 | $ 14.40 |
| INSURANCE | 2.50 | 2.50 | 2.50 |
| PENSION | 1.25 | 1.50 | 1.75 |
| INT. PENSION | 1.15 | 1.15 | 1.15 |
| SUB FUND | .50 | .50 | .50 |
| PROMOTION | .10 | .10 | .10 |
| TRAINING | .02 | .02 | .02 |
| TOTAL | $ 17.42 | $18.92 | $20.42 |

7

This is a copy from the IUBAC Document Management System..

NT 9164

**F)      TILE TRAINEE WAGES: ENTER TRADE AFTER JULY 11, 1991:**

NEWLY HIRED TILE TRAINEE FINIHSERS WHO STARTED WORKING IN THE TRADE AFTER
JULY 11, 1991
All new Finishers are to start as follows: (These are 6 month periods)

|  | 1 | 2 | 3* | 4 |
|---|---|---|---|---|
| Base rate | $7.50 | $8.50 | $9.50 | $10.50 |
| Vacation | $0.00 | $0.00 | $0.50 | $0.50 |
| Dues | $0.40 | $0.40 | $0.40 | $0.40 |
| Taxable | $7.90 | $8.90 | $10.40 | $11.40 |
| Insurance | $2.50 | $2.50 | $2.50 | $2.50 |
| Int. Pension | $0.00 | $0.00 | $1.15 | $1.15 |
| Local Pension | $0.00 | $0.00 | $0.50 | $0.50 |
| Sub Fund | $0.50 | $0.50 | $0.50 | $0.50 |
| Promotion | $0.10 | $0.10 | $0.10 | $0.10 |
| Trainee Fund | $0.02 | $0.02 | $0.02 | $0.02 |
| Total | $11.02 | $12.02 | $15.17 | $16.17 |

|  | 5 | 6 | 7 | 8 ** |
|---|---|---|---|---|
| Base rate | $11.00 | $11.50 | $12.00 | $12.50 |
| Vacation | $0.75 | $1.00 | $1.25 | $1.50 |
| Dues | $0.40 | $0.40 | $0.40 | $0.40 |
| Taxable | $12.15 | $12.90 | $13.65 | $14.40 |
| Insurance | $2.50 | $2.50 | $2.50 | $2.50 |
| Int. Pension | $1.15 | $1.15 | $1.15 | $1.15 |
| Local Pension | $0.75 | $1.00 | $1.25 | $1.50 |
| Sub Fund | $0.50 | $0.50 | $0.50 | $0.50 |
| Promotion | $0.10 | $0.10 | $0.10 | $0.10 |
| Trainee Fund | $0.02 | $0.02 | $0.02 | $0.02 |
| Total | $17.17 | $18.17 | $19.17 | $20.17 |

*After period #3 Committee will decide if man should remain or should
advance to the next stage.
**Advance automatically to Full Finisher, if man & Committee approve
may be advanced to Improver
Committee to decide advancement. Men will also have to attend training
classes.

8

This is a copy from the IUBAC Document Management System..

**2 )    FRINGE BENEFITS:**

The Agreement and Declaration of Trust dated as of April 22, 1957, by which the aforementioned Insurance Fund is governed, is, though a separate document, incorporation herein by reference and made a part of this Agreement. Any amendment previously or hereafter adopted in accordance with the terms of the Agreement and Declaration of Trust is also incorporated herein by reference and shall be a part of this Agreement and of identical effect as though actually reproduced herein.

The Employer shall, on or before the tenth (10th) day of each month, make the contributions required hereunder accompanied by such reports as the Trustees may designate. The Employer specifically understands that, in addition to all of the other terms and conditions contained therein, the Agreement and Declaration of Trust empowers the Trustees to require the Employer to post cash as a security deposit in the amount set by the Trustees in specified circumstances and to impose penalties, in the nature of liquidated damages, on a uniform basis for failure of any Employer to make the required contributions in proper amount when due.

Whenever the Trustees of the Fund believe it to be in the best interest of the employee benefit funds to require an employer to pay contributions more frequently than monthly, including weekly, the Trustees shall so advise the Employer of their demand in writing and the Employer shall comply therewith. Circumstances which may give rise to a determination by the Trustees that a more frequent contribution schedule is required due to frequent delinquency, lack of previous payment history with the Employer, or any other facts or circumstances which give rise to a concern by the Trustees that Contributions may not be made timely in the future. Any decision rendered under this Section shall be in the sole discretion of the Trustees.

**1 )    HEALTH AND WELFARE:** The Association and the Union, in conjunction with the other unions and employer representative, have created an Insurance Trust Fund, known as BAC Local 32 Industry Fund, administered jointly as provided by Federal Law. Each Employer shall contribute to the Insurance Fund $2.50 for each hour worked by each employee performing work within the trade jurisdiction of the Union who has a financial interest in a company, direct or indirect, which is a signatory to this Agreement, whether the interest be as a sole proprietor, partner, shareholder, or some similar financial interest, shall pay to the Fund on the basis of 160 hours per month.

**2 )    VACATION & HOLIDAY:** The Association and the Union, in conjuction with other unions and employer representatives, have created a Vacation and Holiday Trust Fund administered jointly as provided by Federal Law.

The Employer agrees to contribute Two Dollars ($2.00) per hour, for each hour worked on each employee covered hereunder (Trainees refer to Schedule) to the Vacation and Holiday Fund. This amount shall be paid to the Trust Fund for distribution to the employees and identified as Vacation and Holiday pay. The distribution to Employees shall take place during the first week of December and the first week of June of each year, based on a formula agreed upon by the Fund Trustees.

9

This is a copy from the IUBAC Document Management System..

Any person performing work within the trade jurisdiction of the Union who has a financial interest in a company, direct or indirect, which is a signatory to this Agreement whether the interest be as a sole proprietor, partner, shareholder, or some similar financial interest, may pay to the Fund on the basis of 160 hours per month.

3 )    **PENSION:** The Association and the Union, in conjunction with other unions and employer representatives, have created a Pension Fund, known as BAC Local 32 Pension Fund, administered jointly as provided by Federal Law. Each Employer shall make payment to the Pension Fund in the amount of Two Dollars Twenty cents ($2.20) per hour for each hour worked for Tile Layers, Two Dollars ($2.00) per hour for each hour worked for Tile Finishers (Trainees refer to wage schedule). Any person performing work within the trade jurisdiction of the Union who has a financial interest in a company, whether the interest be as a sole proprietor, partner, shareholder, or some similar financial interest, may pay to the Fund on the basis of 160 hours per month.

Copies of the Collective Bargaining Agreement and all renewal or extension agreements will be furnished promptly to the Pension Fund office.

4 )    **BRICKLAYERS AND TROWEL TRADES INTERNATIONAL PENSION FUND PARTICIPATION AGREEMENT:**

A )    Commencing with the 1st day of June, 1980 for Tile Layers and the 1st day of December, 1983 for Tile Finishers, and for the duration of the current Collective Bargaining Agreement between the said parties, and any renewals or extensions thereof, the Employer agrees to make payments to the Bricklayers and Trowel Trades International Pension Fund for each employee covered by the said Collective Bargaining Agreement as follows:

B )    For each hour or portion thereof, which an employee shall make a contribution of Seventy-five cents ($0.75) for Tile Layers and One Dollar Fifteen Cents ($1.15) for Tile Finishers and Trainees per schedule of wages.

C )    Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by the Collective Bargaining Agreement. This includes, but is not limited to apprentices finishers, trainees and probationary employees.

D )    The payments to the Pension Fund required above shall be made to the Bricklayers and Trowel Trades International Pension Fund, which was established under an Agreement and Declaration of Trust dated June 29, 1972, a copy of which has been signed by the Employer in the space provided at the end of such agreement, or to which the employer has become bound by the signing of some other written instrument.

E )    It is agreed that all contributions shall be made at such time and in such manner as the Trustees require; and the Trustees shall have the authority to have an Independent Certified Public Accountant audit the payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the Pension Fund.

10

This is a copy from the IUBAC Document Management System..

F )         If any Employer fails to make contributions to the Pension Fund within twenty (20) days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with the Agreement, any provision of the Collective Bargaining Agreement to the contrary notwithstanding and the Employer shall be liable for all costs for collecting the payments due together with attorney's fees and such liquidated damages which may be assessed by the trustees.

The Employer's liability for payment hereunder shall not be subject to the grievance or arbitration procedure to the "no strike" clause provided under the Collective Bargaining Agreement.

G )         It is agreed that the Pension Plan adopted by the Trustees of the said, Pension Fund shall at all times conform with the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat contributions to the Pension Fund as a deduction for income tax purposes.

H )         The parties agree that this Participation Agreement shall be considered a part of the Collective Bargaining Agreement between the undersigned parties.

I )         Copies of the Collective Bargaining Agreement and all renewal or extension agreements will be furnished promptly to the Pension Fund Office and, if not consistent with the Participation Agreement, can be used by the Trustees as the basis for termination of participation of the Employer

J )         The expiration date of the present Collective Bargaining Agreement between the undersigned parties is through May 27, 1992.

5)      **SUPPLEMENTAL UNEMPLOYMENT BENEFIT FUND/FINISHERS:**

The parties agree that there shall be created a Supplemental Unemployment Benefit Fund. It shall be administered jointly by an equal number of Employer and Employee Trustees under a written agreement and declaration of trust. The Association shall designate and appoint Employer Trustees, and the Union shall designate and appoint Employee Trustees. Each Employer shall pay to the Supplemental Unemployment Benefit Fund Fifty Cents ($0.50) per hour for total hours worked by bargaining unit employees covered by this Agreement (including Trainees).

Any person performing work within the trade jurisdiction of the Union who has a financial interest in a company, direct or indirect, which is a signatory to this Agreement, whether the interest be as a sole proprietor, partner, shareholder, or some similar financial interest shall not pay to the Fund. Amount so deducted shall be paid monthly to such depository or administrative office as the Union shall designate.

6 )      **UNION DUES - CHECK OFF:**

The Employer shall deduct from the wages of each employee who has individually authorized such deduction in writing forty cents ($0.40) per hour for each hour worked, and shall remit the amount so deducted to the Union monthly on or before the tenth day of the month following the month in which the wages were earned. Any such authorization

11

This is a copy from the IUBAC Document Management System..

by an employee to deduct Union dues shall contain a provision as required by law for revocation.

Any person subject to this provision performing work within the trade jurisdiction of the Union who has a financial interest in a company, direct or indirect, which is a signatory to this Agreement, whether the interest be as a sole proprietor, partner, shareholder, or some similar financial interest, shall pay Union dues on the basis of 160 hours per month.

Amount so deducted shall be paid monthly to such depository or administrative office as the Union shall designate. In addition to the dates calculated on the number of hours worked referred to herein, each employee who is a member of the Union shall pay monthly base dues as the Union shall establish.

## 7 )    TRAINING FUND:

**TILE LAYERS:**
Each Employer shall contribute two cents ($0.02) for each hour worked under the terms of this Agreement to an Apprenticeship Program. Amount so deducted shall be paid month to such depository or administrative office as the Association shall designate.

**TILE FINISHERS:**
The employer agrees to pay to the Trustees of the Tile, Terrazzo and Marble Industry Training Fund or to such depository as the Trustees shall designate, two cent ($.02) per hour for all hours worked by all employees covered by this Agreement (including Trainees). Said money shall be paid and applied in accordance with the Plan and Trust Agreement establishing such Fund, together with any amendments thereto, and such lawful rules and regulations as the Trustees may from time to time establish. The Employer agrees to be bound by said Plan and Trust Agreement, any amendments thereto, and rules and regulations established by the Trustees.

## 8 )    INDUSTRY PROMOTION FUND:

In order to expand the market for the services of the Ceramic Tile Industry, to improve the technical and business skills of the Employers, to stabilize and improve Employer-Union relations and to improve the training and employment opportunities for employees, the Employers signatory hereto agree to promote a program of education, training, research, promotion and administration of collective bargaining agreements as shall be determined by the Trustees of Great Lakes Ceramic Tile Council, Inc., which shall be created as hereinafter provided. There is hereby created an Industry Promotion Fund to be administered by four Employer Trustees under a written Declaration of Trust. The Detroit Ceramic Tile contractors Association shall appoint the Employer Trustees to administer the Fund. The Employers signatory hereto agree to be bound by the terms and conditions of the aforesaid trust agreement and all subsequent amendments thereto including any lawful rules and regulations adopted by the Trustees of said Fund. The Trustees of such Fund shall be responsible for the lawful operation of the Fund as required by law.

Each Employer shall pay to the Great Lakes Ceramic Tile Council Fund the sum of Ten Cents ($0.10) per hour for each hour worked by each employee covered hereunder. Any person performing work within the trade jurisdiction of the Union who has financial

This is a copy from the IUBAC Document Management System..

interest in a company, direct or indirect which is a signatory to this Agreement, whether the interest be as a sole proprietor, partner, shareholder, or some similar financial interest, shall pay to the Fund on the basis of 160 hours per month.

**9 )      DELINQUENCY:**

Should an Employer become two months delinquent in contributions to the fringe benefit funds:

a)   The Fund Trustees will notify the Employer, employees and the Union in writing of the delinquency;

b)   If the Employer does not pay all delinquencies when notified, the Union employees shall contact their Union Business Representatives immediately so that the Union can properly direct the employees on what action shall be necessary to expedite payment and avoid loss of insurance and other benefits.

**1 0 )      Audit:** Each Employer hereby agrees to provide for inspection and audit upon request duly authorized by the Trustees of any of the Joint Funds, such books and records as may be necessary to determine whether the Employer is making all payment and contributions required by this Agreement.  In the event that the audit shall reveal a deficiency in the Employer's payments and contributions, the cost of the audit shall be borne by the Employer, but in no case shall the Employer's cost of the audit exceed the amount of the deficiency.

## ARTICLE IV

## OVERTIME, HOLIDAY PAY & WORK HOURS

**A )**      Eight (8) consecutive hours, exclusive of an unpaid one-half (1/2) hour lunch period, shall constitute a regular day's work,  The employer, without the payment of premium time, may modify the starting time of any employee from the regular starting time of 8:00 a.m., to any time from 7:00 a.m. to 9:00 a.m.

**B )**      An overtime rate of time-and-one-half (1 1/2) the employee's regular base rate of pay shall be paid for the first two (2) hours of overtime work Monday through Friday and for the first eight (8) hours of work on Saturday.

**C )**      Double time shall be paid for all hours worked in excess of ten (10) hours in any one day, Monday through Friday, for all hours worked in excess of eight (8) hours on Saturday, for all hours worked on Sundays as well as on any of the holidays: New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, and Christmas Day.

**D )**      Tile Layers and Tile Finishers reporting for work upon order by Employer and not put to work for any reason except weather conditions, fire, accident, or other unavoidable causes shall receive two hours pay for lost time.

**E )**      Any Employer who employees a member retired under the pension fund will report the same to the Union business agent.

**F )**      Maintenance Work.  Maintenance work shall consist of all repair and patching of tile to restore any damaged work to its original condition.  All over-time in maintenance

13

This is a copy from the IUBAC Document Management System..

work shall be paid at the rate of time-and-one-half.   Maintenance worked performed on Sundays and holidays shall be paid at the double time rate,  The maintenance work provision does not include renovation, remodeling or new work.   Should the Employer engage in maintenance work in any building, plant, or facility, the Employer shall contact the Union for its approval of such work at least forty-eight (48) hours prior to starting.   Failure of the Employer to contact the Union within the prescribed time will result in the  denial of the maintenance work provision of this Agreement.   Maintenance work shall be performed under the provisions of the National Maintenance Agreement providing the projects are approved by the Bricklayers and Allied Craftsmen International Union.

**ARTICLE V**

**CONTRIBUTIONS:**

**A )**          The Employer shall, on or before the tenth (10) day of each month, make the fringe benefit contributions required hereunder to the respective trust funds accompanied by such reports as the Trustees may designate the employers specifically understands that, in addition to all of the other terms and conditions contained herein, the Agreement and Declaration of Trust establishing each of the fringe benefit funds empowers the Trustees to require the Employer to post cash as a security deposit in an amount set by the Trustees in a specified circumstance and to impose liquidated damages for failure of any Employer to make the required contributions in the proper amount when due. The Employer and the Union have determined that the following provides a reasonable forecast of just compensation for the harm caused  to the Fund by late contributions.

**B )**          Whenever contributions are not received in the Fund office by the fifteenth (15) day of the month following the month during which hours were worked requiring such contributions, the Employer shall pay five percent (5%) of the delinquent amount as liquidated damages.

**C )**          Whenever contributions are not received in the Fund office by the first (1st) day of second month following the month during which hours were worked requiring such contributions, the Employer shall pay ten percent (10%) of the delinquent amount as liquidated damages.

**D )**          The parties agree that under no circumstances shall any of the Trustees of the Joint Funds (Insurance, Pension or Vacation Funds) accept payment from any Employer where such Employer has not accepted each and every term, obligation, and condition of this Agreement.

**E )**          The Trustees of the Joint Funds are prohibited from accepting any contributions from an Employer unless the Employer has signed a labor Agreement with the corresponding Union detailing the basis on which such payments are to be made to the Joint Funds (i.e., Insurance, Pension or Vacation Funds).

14

## ARTICLE VI

**LEGALITY OF AGREEMENT:**

It is further agreed by and between the parties hereto, that if any Federal or State Court shall at any time decide that any clause or clauses of this Agreement is or are void or illegal, such clause or clauses shall be stricken out and the remaining portion of this Agreement shall be considered binding between the parties hereto.

## ARTICLE VII

**INDUSTRY STANDARDS:**

**1 )** Certain conditions now prevailing in the ceramic tile industry are beneficial to the growth of the industry and to maintaining high production and wage standards, with optimum quality of product. Also certain other conditions not now prevailing would likewise be beneficial and the parties hereto pledge to strive to achieve their realization. These conditions are deemed by the parties to be necessary for the maintenance and growth of the ceramic tile industry and are therefore, made a part of this Agreement.

**2 )** There shall be a standard and uniform written labor agreement embodying the terms and conditions of employment of Tile Layers and Tile Finishers by all members of the Association. The Union recognizes the Association as the exclusive bargaining agent for its members within the geographic jurisdiction of the Union.

## ARTICLE VIII

**GRIEVANCE AND ARBITRATION:**

**A )** Should differences of any kind arise between the Association and the Union as to the interpretation, application or claimed breach of any of the terms of this Agreement, all such differences shall be submitted to the grievance procedure herein provided.

**B )** Should any grievance arise, the same shall be taken up within five (5) days of the event giving rise to the grievance between the Business Manager at BAC Local 32 or his designated representative and the President of the Association or his designated representative.

**C )** If any grievance is not settled as provided above, then either the Union or the Association may, within two (2) regular working days, in writing submit the grievance to the Joint Arbitration Board herin provided for.

**D )** The Joint Arbitration Board shall consist of two (2) representatives from the Association and two (2) representatives selected by the Union. All four (4) members of the Board shall constitute a quorum and must be present at all hearings.

**E )** The duty of the Joint Arbitration Board shall be to hear all grievances submitted to the Committee within forty-eight (48) hours of the submission. Decisions of the Joint Arbitration Board shall be reached by a majority vote of the entire committee. The decision of the Joint Arbitration Board shall be final and binding on the Association, the Employer, the Union and the employee or employees involved.

15

This is a copy from the IUBAC Document Management System..

In the event that the representatives are unable to reach a settlement, the dispute shall be submitted to an impartial third party agreed upon by the Association and Union Representatives for a final and binding decision.

## ARTICLE IX

**IMPERFECT WORK:**

1) Tile Layers and/or Tile Finishers shall be held responsible for all imperfect work pertaining to Tile Layers and/or Tile Finishers work respectively. The Employer shall notify the Business Agent of Local No. 32 while the job is still in progress or not later than one (1) week after completion of the job.

2) If the Joint Arbitration Board finds the complaint justified, they shall order the Tile Layer and/or Tile Finisher respectively to repair his work on his own time without delay.

## ARTICLE X

**RIGHTS OF PARTIES:**

1) It is mutually agreed understood that the Union will not enter into any agreements, oral or written , with any Employer who is not a member of the signatory Association but who is engaged in Tile work as done by members of the Association, in which the terms and conditions of such agreement are more favorable to such Employer than the terms and conditions contained in the Agreement with this Association.

2) In the event the Union enters into any Agreement with another Employer or Employers containing more favorable terms and/or conditions (including wage rates) than those contained herein, the Union agrees that such more favorable terms and conditions shall automatically be extended to Employers covered by this Agreement.

3) Any Union member working as an Independent Contractor will execute a copy of this Agreement and an originally signed copy will be filed at the Fund Office. MESC and Workers Compensation account numbers will be written in at the bottom of the signature page upon execution. The Association will provide the Union with such information with respect to its members within 30 days of execution of this Agreement.

4) The Union will not permit its members to work for any Employer who fails to pay an amount at least equal to the Gross Wages stated in this Agreement.

## ARTICLE XI

**EMPLOYMENT:**

A) The existing National Agreement between the Tile Contractors Association of America, Inc., and the Bricklayers, Allied Craftsmen International Union of America on Apprenticeship now in effect shall be and is hereby an integral part of this Agreement.

B) The Employers, when requiring additional men, may request same from the Union office. To care for emergency periods, when there are no Tile Layers and/or Tile

16

MI 9164

Finishers available, Improvers and/or Trainees respectively may be furnished by the Union during the emergency.

C )       The parties will jointly take the necessary steps to comply with all laws and ordinances to assure, within the scope of this Agreement compliance with equal opportunity, and fair employment practice laws and ordinances and agree that the employment, referral or selection of all employees shall be on the basis of qualification without regard to race, color, sex, religion, national origin or ancestry. The existing National Agreement between the Tile contractors Association of America, Inc., and the Bricklayers, Allied Craftsmen International Union of America on Apprenticeship now in effect shall be and is hereby an integral part of this Agreement.

D )       This agreement is a participatory agreement and accepted only by members either signing or giving the Association Power of Attorney.

## ARTICLE XII

**TERMINATION:**

      It is agreed by both parties that this Agreement shall remain in full force and effect through May 27, 1992 and from year to year thereafter unless written notice of intent to terminate or modify the Agreement be submitted, at least sixty (60) days prior to the expiration date by either party to the other.

TILE LAYERS AND TILE FINISHERS       DETROIT CERAMIC TILE
BAC LOCAL 32 MICHIGAN       CONTRACTORS ASSOCIATION

_David A. Medici_  9-5-91       _(signature)_  9-5-91
David A. Medici    DATE       Robert Michielutti    DATE

_Carl Volpe_  9-5-91       _(signature)_  9-5-91
Carl Volpe    DATE       Roy Bianchini    DATE

                                          _(signature)_  9-5-91
                                          E. C. Mularoni    DATE

We the undersigned have read and understood the terms and conditions of the foregoing Labor Agreement and hereby agree to be bound thereto.

_____       _____
Signature    DATE       Name of Company

M.E.S.C. No._____

_____
Workers Compensation Policy No.

17

Finishers available. Improvers and/or Trainees respectively may be furnished by the Union during the emergency.

C )        The parties will jointly take the necessary steps to comply with all laws and ordinances to assure, within the scope of this Agreement compliance with equal opportunity, and fair employment practice laws and ordinances and agree that the employment, referral or selection of all employees shall be on the basis of qualification without regard to race, color, sex, religion, national origin or ancestry.  The existing National Agreement between the Tile contractors Association of America, Inc., and the Bricklayers, Allied Craftsmen International Union of America on Apprenticeship now in effect shall be and is hereby an integral part of this Agreement.

D )        This agreement is  a participatory agreement and accepted only by members either signing or giving the Association Power of Attorney.

## ARTICLE XII

TERMINATION:

It is agreed by both parties that this Agreement shall remain in full force and effect through May 27, 1992 and from year to year thereafter unless written notice of intent to terminate or modify the Agreement be submitted, at least sixty (60) days prior to the expiration date by either party to the other.

TILE LAYERS AND TILE FINISHERS
BAC LOCAL 32 MICHIGAN

DETROIT CERAMIC TILE
CONTRACTORS ASSOCIATION

David A. Medici    9-5-91
David A. Medici        DATE

Carl Volpe    9-5-91
Carl Volpe        DATE

Robert Michielutti    9-5-91
Robert Michielutti        DATE

Roy Bianchini    9-5-91
Roy Bianchini        DATE

E. C. Mularoni    9-5-91
E. C. Mularoni        DATE

. We the undersigned have read and understood the terms and conditions of the foregoing Labor Agreement and hereby agree to be bound thereto.

Signature    9-23-91    DATE

Name of Company
ELEGANTE
CEREMIC TILE & MARBI
INSTALLATION INC.
37201 SUSAN STREET
STERLING HTS. MI 48310
(313) 268-0398

M.E.S.C. No. 1147785

MESC 1183
Workers Compensation Policy No.

17

JUL 19 '91 09:25 LOCAL #32 FAX #557-3646

MI 9164

# Marble Masons, Tile Layers and Terrazzo Workers

### International Union, Bricklayers and Allied Craftsmen Local No. 32

26021 SOUTHFIELD ROAD, SUITE 103  •  LATHRUP VILLAGE, MICHIGAN 48076  •  PHONE 557-1930

## TILE SETTERS

JUL 19 1991

| | |
|---|---|
| BASE RATE | $17.87 |
| VACATION & HOLIDAY | $2.00 |
| DUES CHECK OFF | $0.40 |
| TAXABLE | $20.27 |
| HEALTH & WELFARE | $2.50 |
| PENSION | $2.20 |
| INT. PENSION | $0.75 |
| PROMOTION | $0.10 |
| APPRENTICESHIP | $0.02 |
| TOTAL | $25.84 |

## TILE FINISHER(HELPERS)

| | |
|---|---|
| BASE RATE | $15.07 |
| VACATION & HOLIDAY | $2.00 |
| DUES CHECK OFF | $0.40 |
| TAXABLE | $17.47 |
| HEALTH & WELFARE | $2.50 |
| PENSION | $2.00 |
| INT. PENSION | $1.15 |
| SUB | $0.50 |
| PROMOTION | $0.10 |
| TRAINING | $0.02 |
| TOTAL | $23.74 |

GENTLEMEN, PLEASE NOTE THE CHANGES IN THE WAGE SCALE
EFFECTIVE JULY 11, 1991 THRU MAY 27, 1992

LOCAL 32

*David Medici*
1-313-557-1930

TILE ASSOCIATION

*[signature]*
313-777-5264

This is a copy from the IUBAC Document Management System.

JUL 19 '91 09:25 LOCAL #32 FAX #557-3646

P.3

# Marble Masons, Tile Layers and Terrazzo Workers

### International Union, Bricklayers and Allied Craftsmen Local No. 32

26021 SOUTHFIELD ROAD, SUITE 103    •    LATHRUP VILLAGE, MICHIGAN 48076    •    PHONE 557-1930

MI 9164
JUL 19 1991

### MARBLE MASON

| | |
|---|---|
| BASE RATE | $18.48 |
| VACATION & HOLIDAY | $2.00 |
| DUES CHECK OFF | $0.40 |
| | |
| TAXABLE | $20.88 |
| HEALTH & WELFARE | $2.50 |
| PENSION | $2.20 |
| INT. PENSION | $0.75 |
| | |
| TOTAL | $26.33 |

### MARBLE FINISHER (HELPERS)

| | |
|---|---|
| BASE RATE | $15.07 |
| VACATION & HOLIDAY | $2.00 |
| DUES CHECK OFF | $0.40 |
| | |
| TAXABLE | $17.47 |
| HEALTH & WELFARE | $2.50 |
| PENSION | $2.00 |
| INT. PENSION | $1.15 |
| SUB | $0.50 |
| TRAINING | $0.02 |
| | |
| TOTAL | $23.64 |

GENTLEMEN, PLEASE NOTE THE CHANGES IN THE WAGE SCALE
EFFECTIVE JULY 11, 1991 THRU MAY 27, 1992

LOCAL 32

*David Medici*

1-313-557-1930

MARBLE ASSOCIATION

1-313-777-5264

This is a copy from the IUBAC Document Management System..

JUL 19 '91 09:25 LOCAL #32 FAX #557-3646                                    P.4

# Marble Masons, Tile Layers and Terrazzo Workers

## International Union, Bricklayers and Allied Craftsmen Local No. 32

26021 SOUTHFIELD ROAD, SUITE 103    •    LATHRUP VILLAGE, MICHIGAN 48076    •    PHONE 557-1930

### TERRAZZO WORKERS

| | |
|---|---|
| BASE RATE | $17.87 |
| VACATION & HOLIDAY | $2.00 |
| DUES CHECK OFF | $0.40 |
| | |
| TAXABLE | $20.27 |
| HEALTH & WELFARE | $2.50 |
| PENSION | $2.20 |
| INT. PENSION | $0.75 |
| PROMOTION | $0.10 |
| | |
| TOTAL | $25.82 |

JUL 19 1991

MI 9164

### TERRAZZO FINISHER (HELPERS)

| | |
|---|---|
| BASE RATE | $15.07 |
| VACATION & HOLIDAY | $2.00 |
| DUES CHECK OFF | $0.40 |
| | |
| TAXABLE | $17.47 |
| HEALTH & WELFARE | $2.50 |
| PENSION | $2.00 |
| INT. PENSION | $1.15 |
| SUB | $0.50 |
| PROMOTION | $0.20 |
| TRAINING | $0.02 |
| | |
| TOTAL | $23.84 |

GENTLEMEN, PLEASE NOTE THE CHANGES IN THE WAGE SCALE
EFFECTIVE JULY 11, 1991 THRU MAY 27, 1992

LOCAL 32

*David Medici*

1-313-557-1930

TERRAZZO ASSOCIATION

313-777-5264

This is a copy from the IUBAC Document Management System.

## I (a) PLAINTIFFS

JOHN FLYNN, et al.

## DEFENDANTS

ELEGANTE CERAMIC TILE & MARBLE INSTALLATION, INC.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    11001
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Ira R. Mitzner (202) 420-2200
Dickstein Shapiro LLP
1825 Eye Street, N.W.
Washington, DC 20006

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
● 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ⊙ G. *Habeas Corpus/ 2255* | ⊙ H. *Employment Discrimination* | ⊙ I. *FOIA/PRIVACY ACT* | ⊙ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ⊙ K. *Labor/ERISA (non-employment)* | ⊙ L. *Other Civil Rights (non-employment)* | ⊙ M. *Contract* | ⊙ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☒ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding   ⊙ 2 Removed from State Court   ⊙ 3 Remanded from Appellate Court   ⊙ 4 Reinstated or Reopened   ⊙ 5 Transferred from another district (specify)   ⊙ 6 Multi district Litigation   ⊙ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

ERISA - Complaint filed for recovery of delinquent contributions - 29 U.S.C. Sections 1002, 1132, 1145

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint

JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 4/8/08   SIGNATURE OF ATTORNEY OF RECORD _____

---

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.